J-A17036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| FRANCIS FINNEGAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ARCHDIOCESE OF PHILADELPHIA AND MONSIGNOR WILLIAM LYNN | |
| Appellees | No. 3002 EDA 2014 |

Appeal from the Judgment Entered September 24, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 01377 March Term, 2011

| | |
|---|---|
| PHILIP GAUGHAN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ARCHDIOCESE OF PHILADELPHIA AND MSGR. WILLIAM LYNN | |
| Appellees | No. 3173 EDA 2014 |

Appeal from the Judgment Entered September 24, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2011 No. 000052

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED OCTOBER 6, 2015**

Appellant, Francis Finnegan, and Appellant, Philip Gaughan, filed separate appeals from the summary judgments entered against them in the Philadelphia County Court of Common Pleas, in favor of Appellees, the

Archdiocese of Philadelphia and Msgr. William Lynn. After careful review, we affirm.

The relevant facts and procedural history with respect to Appellant Finnegan are as follows. Appellant Finnegan was born on May 26, 1961. As a boy, he attended St. Francis Xavier parish in Philadelphia, Pennsylvania. One of the priests assigned to St. Francis Xavier parish was Fr. John Kline, who was a close family friend. Appellant Finnegan alleged that between 1968 and 1970, Fr. Kline sexually abused Appellant Finnegan on numerous occasions. Following the abuse, Appellant Finnegan claims to have repressed his memory of the incidents until 2007. In the spring of 2007, when Appellant Finnegan was forty-six years old, he recalled a single memory of the sexual abuse while speaking with his brother. Since that time, Appellant Finnegan claims the memories of sexual abuse have come back to him in waves; and he now remembers many incidents of abuse. In 2008, Appellant Finnegan reported the sexual abuse to the Victim Assistance Program of the Archdiocese of Philadelphia. The Victim Assistance Program offered to put Appellant Finnegan in contact with medical and psychological assistance; however, Appellant Finnegan did not seek psychiatric help until 2011. During treatment, Appellant Finnegan was diagnosed with chronic post-traumatic stress disorder ("PTSD") with delayed onset, stemming from the alleged sexual abuse he endured as a child.

On March 16, 2011, Appellant Finnegan filed a complaint against

Appellees in the Philadelphia Court of Common Pleas.[1]  Appellant Finnegan amended his complaint twice and filed his second amended complaint on June 20, 2011, alleging one count each of vicarious liability under New Jersey law for the sexual abuse he endured in New Jersey, vicarious liability under Pennsylvania law for the sexual abuse he endured in Pennsylvania, negligence under Pennsylvania law, negligent supervision under New Jersey law, civil conspiracy to endanger the welfare of children, and fraudulent concealment.

The relevant facts and procedural history with respect to Appellant Gaughan are as follows.  Appellant Gaughan was born on January 10, 1980.  In 1994, he began working as a sacristan at Our Lady of Calvary parish in Philadelphia where Msgr. John Gillespie was a parish priest.  Appellant Gaughan alleged that beginning in 1994 and continuing through 1997, Msgr. Gillespie sexually abused him on numerous occasions.  In 2010, Appellant Gaughan reported the sexual abuse to the Victim Assistance Program of the Archdiocese of Philadelphia.  That same year, Appellant Gaughan entered counseling upon the recommendation of the Victim Assistance Program.

---

[1] The original complaint in both Mr. Finnegan's case and Mr. Gaughan's case included additional defendants who were dismissed prior to the filing of the motions for summary judgment.  Consequently, they are not parties in this appeal.  Additionally, Mr. Finnegan and Mr. Gaughan filed separate motions to discontinue this appeal as to Msgr. Lynn, which this Court granted on March 9, 2015, and April 13, 2015, respectively.  The only remaining Appellee is the Archdiocese of Philadelphia.

During treatment, Appellant Gaughan was diagnosed with chronic PTSD stemming from the alleged sexual abuse he endured as a child.

On March 7, 2011, Appellant Gaughan filed a complaint against Appellees in the Philadelphia Court of Common Pleas. Appellant Gaughan amended his complaint twice and filed his second amended complaint on June 20, 2011, alleging one count each of fraud, negligent supervision, conspiracy to endanger the welfare of children, and fraudulent concealment. During his deposition on May 16, 2014, Appellant Gaughan admitted that he always remembered the abuse, but claimed to have only recently realized that the sexual abuse caused his psychological issues.

On June 3, 2014, Appellees filed motions for summary judgment as to both Appellant Finnegan's and Appellant Gaughan's second amended complaints. After oral arguments on both motions, the trial court granted summary judgment and dismissed Appellant Finnegan's and Appellant Gaughan's second amended complaints with prejudice on September 24, 2014. Appellant Finnegan and Appellant Gaughan separately filed timely notices of appeal on October 16, 2014. The trial court ordered both parties to file Rule 1925(b) concise statements of errors complained of on appeal, and both parties separately and timely complied on November 7, 2014. On March 13, 2015, Appellant Finnegan and Appellant Gaughan jointly filed an unopposed motion for consolidation of the appeals, which this Court granted on April 13, 2015.

At docket No. 3002 EDA 2014, Appellant Finnegan raises the following issues for our review:

> DID THE [TRIAL] COURT ERR BY GRANTING [APPELLEE'S] MOTION FOR SUMMARY JUDGMENT ON THE GROUND THAT THE STATUTE OF LIMITATIONS FOR SEXUAL ABUSE BY A PRIEST HAD EXPIRED[?]
>
> DID THE [TRIAL] COURT ERR AS A MATTER OF LAW BY GRANTING [APPELLEE'S] MOTION FOR SUMMARY JUDGMENT ON THE GROUND THAT THE STATUTE OF LIMITATIONS FOR CHILD SEX ABUSE IS NOT TOLLED BY MEDICO-PSYCHOLOGICAL DISABILITY[?]
>
> DID THE [TRIAL] COURT ERR AS A MATTER OF LAW BY GRANTING [APPELLEE'S] MOTION FOR SUMMARY JUDGMENT BY TREATING THE FACTS OF CHILDHOOD SEX ABUSE AS IRRELEVANT TO THE FACT DETERMINATION OF WHEN A PLAINTIFF WHO WAS SEXUALLY ABUSED BY A PRIEST HAS DISCOVERED AN INJURY FOR PURPOSES OF CALCULATING THE STATUTE OF LIMITATIONS UNDER THE DISCOVERY RULE[?]

(Appellant Finnegan's Brief at 4).

At docket No. 3173 EDA 2014, Appellant Gaughan raises the following issue for our review:

> DID THE TRIAL COURT ERR IN DETERMINING THE FACTUAL ISSUE OF WHEN APPELLANT LEARNED HE WAS INJURED PURSUANT TO PENNSYLVANIA'S TWO YEAR DISCOVERY RULE AS A MATTER OF LAW?

(Appellant Gaughan's Brief at 2).

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of Am.*, 908 A.2d 344, 347 (Pa.Super. 2006).

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super. 2000)

(internal citations omitted). Our scope of review is plenary. *Pappas v.*

*Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536

U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002). In reviewing a trial

court's grant of summary judgment,

[W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of

law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted).

For purposes of disposition, we combine Appellant Finnegan's issues and Appellant Gaughan's issue. Appellant Finnegan and Appellant Gaughan commonly argue that genuine issues of material fact exist regarding when they discovered their injuries. They claim their real injuries occurred not when the abuse occurred, but when they connected the negative psychological effects of the abuse to the specific instances of abuse. For these reasons, Appellant Finnegan and Appellant Gaughan assert this Court should apply the discovery rule to toll the statute of limitations in their childhood sexual abuse cases until they discovered or reasonably should have discovered the full extent of their injuries. Appellant Finnegan and Appellant Gaughan aver that questions of fact surround when they discovered the connection between the alleged instances of abuse and the later psychological harms. Appellant Finnegan and Appellant Gaughan conclude the trial court erred by granting Appellees' motions for summary judgment, and we should reverse and remand for trial. We disagree.

In Appellant Finnegan's case, Section 5524 of the Pennsylvania code provides the applicable statute of limitation:

**Section § 5524.  Two year limitation**

The following actions and proceedings must be commenced within two years:

\*     \*     \*

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

\*     \*     \*

42 Pa.C.S.A. § 5524(7).

In Appellant Gaughan's case, Section 5533 of the Pennsylvania Code provides the applicable statute of limitation:

**§ 5533.  Infancy, insanity or imprisonment**

**(a)   General rule.**—Except as otherwise provided by statute, insanity or imprisonment does not extend the time limited by this subchapter for the commencement of a matter.

**(b)   Infancy.**—If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced.  Such persons shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter.  As used in this subsection, the term minor shall mean an individual who has not yet attained the age of 18.

42. Pa.C.S.A. § 5533(a)-(b). In 2002, the Pennsylvania legislature amended Section 5533(b) to include a new statute of limitations for childhood sexual abuse cases, which states in relevant part:

**Section § 5533.  Infancy, insanity or imprisonment**

\*   \*   \*

**(b)   Infancy.—**

\*   \*   \*

(2)(i) If an individual entitled to bring a civil action arising from childhood sexual abuse is under 18 years of age at the time the cause of action accrues, the individual shall have a period of 12 years after attaining 18 years of age in which to commence an action for damages regardless of whether the individual files a criminal complaint regarding the childhood sexual abuse.

\*   \*   \*

42 Pa.C.S.A. § 5533(b)(2)(i).

As a general rule, "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." ***Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.***, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). The right to institute a suit generally "arises when the injury is inflicted." ***Fine v. Checcio***, 582 Pa. 253, 266, 870 A.2d 850, 857 (2005) (internal citation omitted). "A party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is

based and to institute suit within the prescribed statutory period." ***Pocono Int'l Raceway, Inc., supra*** at 84, 468 A.2d at 471. "The statute of limitations requires aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims made…." ***Meehan v. Archdiocese of Philadelphia***, 870 A.2d 912, 919 (Pa.Super. 2005), *appeal denied*, 584 Pa. 717, 885 A.2d 985 (2005) (internal citation omitted). "Statutes of limitations are designed to effectuate three purposes: (1) preservation of evidence; (2) the right of potential defendants to repose; and (3) administrative efficiency and convenience." ***Kingston Coal Company v. Felton Min. Co., Inc.,*** 690 A.2d 284, 288 (Pa.Super. 1997), *appeal denied*, 549 Pa. 702, 700 A.2d 441 (1997).

"The discovery rule is an exception to the requirement that a complaining party must file suit within the statutory period." ***Meehan, supra*** at 919. The discovery rule provides:

> [W]here the existence of the injury is not known to the complaining party and such knowledge cannot *reasonably be ascertained* within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. The "discovery rule" arises from the inability of the injured party, despite the exercise of *reasonable diligence*, to know of the injury or its cause. Its purpose is to exclude the period of time during which the injured party is *reasonably unaware* that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury.

***Kingston Coal Co., supra*** at 288-89 (emphasis in original) (internal

- 10 -

citation omitted). "The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." **Dalrymple v. Brown**, 549 Pa. 217, 224, 701 A.2d 164, 167 (1997). The reasonable diligence standard "is not a standard of reasonable diligence unique to a particular plaintiff, but instead a standard of reasonable diligence as applied to a 'reasonable person.'" **Id.** "[T]he point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." **E.J.M. v. Archdiocese of Philadelphia**, 622 A.2d 1388, 1391 (Pa.Super. 1993) (internal citation omitted).

"Pennsylvania law does not permit the tolling of a statute of limitations on account of an incapacity of the particular plaintiff which allegedly impaired his…ability to discover the injury or its cause." **Id.** at 1393. "[W]here a plaintiff is aware of the fact of the injury, failure to know that [the plaintiff has] a cause of action resulting therefrom will not toll the statute of limitations." **Dalrymple, supra** at 227, 701 A.2d at 169. "The very essence of the discovery rule in Pennsylvania is that it applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury." **Id.** at 228-29, 701 A.2d at 170.

In a childhood sexual abuse case "the underlying cause of action is fundamentally one for battery, which basically is defined as an intentional [non]consensual harmful contact, [and] a plaintiff will ordinarily know all he…needs to know concerning the **injury** and its cause at the moment the battery occurs." **E.J.M., supra** at 1393 (emphasis added). Importantly, "the discovery rule [does] not toll the statute of limitations period for an action based upon sexual abuse of a minor, even [if] the plaintiff allege[s] that [he] has repressed the memory of the sexual abuse." **Pearce v. Salvation Army**, 674 A.2d 1123, 1125 (Pa.Super. 1996). Additionally, the discovery rule fails to toll the limitations period where the plaintiff is aware of the sexual assault, but is unaware that the sexual abuse harmed him or was wrongful. **E.J.M., supra** at 1394. In **E.J.M.**, this Court stated:

> [An] appellant need not…know that what was happening to him was "abuse," *i.e.* was wrongful, or precisely what type of psychological or emotional harm he would suffer as a result. Once he knew what was happening and who was doing it, he had a duty to investigate these questions and institute suit within the limitations period.

*Id.*

Instantly, Appellant Finnegan's case asserts numerous occasions of sexual abuse between 1968 and 1970. Under the two-year statute of limitations applicable to his claim, Appellant Finnegan had until 1972 to file suit. **See** 42 Pa.C.S.A. § 5524. Nevertheless, Appellant Finnegan did not file suit until March 16, 2011, almost forty (40) years after the applicable statute of limitations had expired. Additionally, Appellant Finnegan's

- 12 -

assertion that his memories of the abuse were repressed until 2007, does not toll the statute of limitations for his childhood sexual abuse claims, because Pennsylvania law does not allow "repressed memory" claims to toll the limitations period. *See Pearce, supra*. Even if repressed memory could toll the limitations period, Appellant Finnegan would have had until 2009 to meet the two-year statute of limitations applicable to his claim. *See* 42 Pa.C.S.A. § 5524. Nonetheless, Appellant Finnegan waited almost four (4) years from the time he first "recalled" the childhood sexual abuse to institute this action. Therefore, in any event, his claims are barred by the statute of limitations. *See* 42 Pa.C.S.A. § 5524.

Appellant Gaughan's case alleges numerous occasions of sexual abuse beginning in 1994 and continuing through 1997, when Appellant Gaughan served as a sacristan at Our Lady of Calvary parish. Under the statute of limitations applicable to his claims, Appellant Gaughan had until January 10, 2000, two (2) years after he reached the age of majority, to file suit. *See* 42 Pa.C.S.A. § 5533(b). Appellant Gaughan admitted in his deposition testimony that he remembered the abuse from the time it occurred and knew it was wrong. Nevertheless, Appellant Gaughan did not file suit until March 7, 2011, over eleven (11) years after the limitations period expired. Therefore, his claims are barred by the statute of limitations. *See* 42 Pa.C.S.A § 5533.

Further, Appellant Finnegan's and Appellant Gaughan's reliance on the

discovery rule as it applies to asbestos cases is misplaced. This Court recognizes the "separate disease" application of the discovery rule in asbestos cases due to the unique nature of asbestos exposure. ***See Abrams v. Pneumo Abex Corp.***, 602 Pa. 627, 637, 981 A.2d 198, 204-05 (2009) (explaining when person is exposed to asbestos, there may not always be immediately cognizable injury, so courts will toll statute of limitations until plaintiff is aware of definitive injury caused by asbestos exposure). Unlike the asbestos scenario, where the exposure to asbestos does not necessarily constitute an immediate injury, the childhood sexual abuse endured by Appellant Finnegan and Appellant Gaughan constituted actionable batteries at the time of the occurrences. ***See E.J.M., supra***. Consequently, Appellant Finnegan and Appellant Gaughan knew or should have known of the facts of their injuries and were immediately capable of filing suit. ***See Fine, supra***. That Appellant Finnegan and Appellant Gaughan might not have known the full extent of the psychological harm done, until 2011 when they were diagnosed with chronic PTSD, is immaterial. ***See E.J.M, supra***. The fact remains that they knew what was happening and who was doing it when the abuse occurred and should have instituted their actions within their prescribed statutes of limitations. Therefore, their claims remain time barred. ***See id.*** Accordingly, we affirm the summary judgments entered in their respective cases.

Judgments affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/6/2015</u>